In re Thomas W. THOMPSON, a/k/a Tommy W. Thompson, Debtor.

**Julia Johnson, Plaintiff,**

**v.**

**Tom W. Thompson, Defendant.**

**Bankruptcy No. 98–00065–AP–RRS–7.**

United States Bankruptcy Court, M.D. Alabama.

Oct. 19, 1998.

---

1. See also *In re Walker,* 48 F.3d 1161 (11th Cir.1995).

Collier H. Espy, Jr., Dothan, AL, for debtor/defendant.

Richard W. Whittaker, Enterprise, AL, for plaintiff.

*Opinion on Complaint To Determine Dischargeability*

RODNEY R. STEELE, Bankruptcy Judge.

At Dothan on October 14, 1998, the Court heard argument of counsel, and received in support of the above complaint the record filed in the Alabama Court of Civil Appeals, which includes the trial transcript and record from the Circuit Court of Coffee County, Alabama, Enterprise Division. The Defendant did not appear. His attorney for this bankruptcy filed a general response and was present, but offered no evidence.

*Findings*

The complaint asserts that Plaintiff has a judgment against Defendant for $60,-000.00 entered by the above Circuit Court which establishes a debt for money or property obtained by false pretenses, a false representation or actual fraud, (Title 11 U.S.C. § 523(a)(2)(A)), or for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny (Title 11 U.S.C. § 523(a)(4)) and is therefore not dischargeable in bankruptcy.

The Circuit Court complaint alleges as against Defendant, breach of contract, money had and received, conversion, detinue, negligence/wantonness, and conspiracy to convert or misuse monies of another. The jury verdict was a general verdict for $30,000.00 plus $30,000.00 punitive, upon which judgment entered. Plaintiff was awarded a judgment against another defendant for other alleged misconduct in the amount of $15,000.00

Defendant's appeal of the judgment of the Coffee County Circuit Court to the Court of Civil Appeals was dismissed by the appeals court.

Debtor's aunt Julia, the Plaintiff here, set up an account in the Fort Rucker credit union, with approximately $37,-000.00. This money was derived from the

assets of another aunt, Mary, who had gone into a nursing home. The money was for the support and maintenance of Mary. Julia had a right to draw on it, but because she lived in Florida, she made Defendant a co-signatory on the account, so he could write checks on the account to provide for Mary. Defendant lived near the nursing home. Julia discovered that the Defendant had taken $2,500.00 out of the account for his personal use. She confronted him, and he promised to pay it back. He paid back only $300.00. Julia took steps to protect the money by withdrawing $20,000.00 of it and buying two certificates of deposit, which could not be reached without surrender of the CDs, which she kept. Julia then became ill and could not monitor the bank account. Defendant induced the credit union to cash the CDs and deposit the money into the joint account. He promptly withdrew all but about $800.00 of that account, placed it in his own accounts, and put it all to his personal use. None of it was used for Mary. His testimony at trial makes it clear that he knew the money was for the maintenance of Mary. He has not repaid any of the money he removed from the account.

## Conclusions

Jurisdiction lies here under Title 28 U.S.C. §§ 157 and 1334.

 A reading of the complaint here and in the Circuit Court, and portions of the testimony in the Circuit Court make clear that this debtor knowingly and intentionally converted the money which had been set aside for his aunt Mary for his own personal use. He admitted as much at the trial. By false pretense or misrepresentation he induced the Credit Union to cash the CDs and place the money in an account where he had the right to withdraw funds. He did this by falsely telling the Credit Union that the Certificates of Deposit had been lost, when he knew Julia had them in her possession. He executed the necessary papers attesting that they were lost. He had no right to these funds. See Section 523(a)(2)(A).

 Moreover, it is clear that he was acting in a fiduciary capacity. Although there is no showing of a formal trust, he understood that the money was for Mary, and that he had been named as a co-signer on the joint account for the sole purpose of providing funds to the nursing home and to Mary, because Julia was living away from Coffee County where the nursing home was located. He breached this trust when he fraudulently converted the CDs and the joint account money to his own use. See Section 523(a)(4).

The conclusion must be that the judgment debt is not dischargeable.